and we'll turn to the third case on the calendar today which is Pierce against City of New York at dial 19-1557-CV. Good afternoon your honors and thank you for making this possible. My name is Greg Antolino and I represented Laryn Pierce in both trials with Danielle and Anal. Now we understand this case is not about false arrest but it was undisputed at the street encounter on Labor Day. Mr. Pierce was not under arrest nor was he told he was not free to go. He was scared and he panicked after many minutes of ambiguity and terror can become more terrible from ambiguity. So let's and no matter what plaintiffs say of mine. The issue is whether what happened thereafter was proportional to what was admittedly a confusing accusation of petty theft. If the accusation had been clear why did the officers not arrest at the time when it would have been safe to do so? But the jury found the defendant's response by chasing Mr. Pierce in a patrol car was not proportional to a reasonable law enforcement objective and that's the standard set forth in Idry versus McGuire for excessive force. The jury with an instruction requested by the defense found that the force used was unproportional and therefore excessive. The district judge dispensed with that verdict however his reasoning does not withstand scrutiny. His opinion in part attacks plaintiff's counsel arguing recklessness in summation at all but recklessness was a word the city suggested and requested and the court delivered. As such it was not proper for any counsel to argue recklessness. The defense invited any conceivable error on that and it should not have been rewarded with a second bite at the apple. The court also alleged that there was a contradiction between plaintiff's opening and closing statements and I've looked at it again and again. I asked you to look the opening statement is milquetoast and says nothing it contradicts nothing. At least 90 percent of this case was grounded in testimony and credibility much of which conflicted. Only a jury could have recredit and recall and ING global which hold that where a verdict is predicated almost entirely on the jury's assessments of credibility it generally should not be disturbed except in an egregious case. But this was not an egregious case. The jury came to a very carefully tailored verdict and did not award an outrageous amount. The police used a car to chase down an unarrested pedestrian. The jury found that unreasonable and that was not a miscarriage of justice especially given the defendants requested instruction of recklessness. The court also carved out which witnesses to believe credible and to what extent they were credible. But a court on rule 59 has no business doing that. That is probably a seventh amendment error but certainly a violation of this court's interpretations of rule 59. This court should therefore reinstate the verdict against police officer Bilardo. The same is true as to the verdict against sergeant Mercado. The court dismissed that claim under rule 50 but the court did not review the evidence in favor of the verdict winner and weigh it or assess it as required by Reeves. The jury reversed the Sanderson products. The jury was not required to believe either Mercado or Bilardo. The jury reasonably found that Mercado the supervisor should have done something before the hit whether to abandon the idea of chasing a pedestrian in a that indicated plaintiff was on the street so they were aware of the risk. The evidence construed in plaintiff's favor showed that sergeant Bilardo just went along with a potentially life-threatening course of action. The final point that I'll make in my statement is that qualified immunity was not preserved in many ways. First, the defense did not press the issue as required at trial. It invited the court to charge recklessness which is their qualified immunity argument on appeal but no party may invite error then seek relief given a strategic decision at trial that went wrong. Indeed, in the memoranda submitted below, the defense never made the argument they make now that recklessness is somehow a novel theory. It is not and has been instructed to many juries along with excessive over the years. Maybe Dancy against McGinley changed that by requiring the but the city jumped in and said we want this instruction instead so it is unfair to blame plaintiffs for arguing recklessness when the city invited the error. Thank you. Thank you counsel. Judge Keirs, any questions? No questions, thank you. Judge Jacobs? No questions, thank you. I have none so we'll hear from counsel for the city of New York at all. Thank you, your honor. This is Ingrid Gustafson appearing on behalf of the city and may it please the court. Plaintiff has identified on no basis either here today or in the briefing to disturb the jury verdict with respect to Bilardo or the district court's judgment as to Sergeant Mercado. I'm going to focus on Officer Bilardo because that's really the central claim at this point. If she can't be held liable for using excessive force in the context between her vehicle and Pierce, there's no basis for finding Sergeant Mercado liable failure to intervene in that force. I'm going to start at the outset by talking about the scienter requirements in this area. I know that plaintiff's counsel today referred extensively to proportionality and recklessness but under established law, Officer Bilardo could not be held liable on these facts for the vehicle contact unless she could only be held liable if she acted intentionally, that is if she intended her vehicle to be the means through which Pierce was stopped. The reason for that is because prior to that point, it's undisputed that Pierce was not seized. He was fleeing from the police at that point and a suspect in flight is not seized under established Supreme Court precedent. In order for the Fourth Amendment to attach, there needed to be an intentional act because seizures are intentional as this court has long held and recently reaffirmed in Dancy. Of course, intentionality was the focus of the second trial and the jury found that the plaintiff had failed to prove by ponderance of the evidence that Officer Bilardo acted intentionally. There's no basis to alter that decision. Plaintiff, of course, was resisting the intentionality standard but I think it's theory throughout almost all of this case. It was very specifically pleaded in the complaint and most certainly was in plaintiff's opening at the first trial. If I may refer your honor to page 174 of the record, what plaintiff's counsel said was they chased him with a car, they hit him with a car in another lane just so he wouldn't get away. And of course, that is what plaintiff has done. And that was the focus of the testimony. At neither trial, was there any exploration of what it would mean to be reckless in this context? And in fact, we now have two different district court judges who concluded that recklessness doesn't fly on this record. Recklessness is conscious disregard of known probable consequences and there is just simply no evidence that Officer was an independent actor and who by his account was running entirely on the sidewalk before he decided to run directly across the street, not just any street, Flatbush Avenue, the busiest street in downtown Brooklyn, directly in front of two vehicles that were pursuing him. Judge Cogut providently found that the only evidence that plaintiff pursued on this theory, which was the speed of the vehicle, was highly implausible. And in any event, as the theory emphasized, the police are allowed to speed during the pursuit. Now, plaintiff has two central, I think, complaints here that go to the conduct of the trial. And I think to understand why they're misguided, we need to pull apart what the difference is between the two trials. When we're talking about the first trial, no one's challenging the jury instructions. And the district court didn't simply fault plaintiff for relying on the jury instructions, but for making a last minute pivot to a theory that was not explored at trial and that was unsupported by any plausible evidence. The mere existence of a or consent to a jury instruction does not bar the district court from then engaging in weight of the evidence review. And defendants don't, with just the first trial, dispute that they've waived an objection to the recklessness instruction. But the reason why that happened was because plaintiff, the party's attention was not drawn to it because plaintiff's theory throughout this entire case had always been intentionality. And when we are talking about the second trial, the jury instructions were entirely correct under, as I've already set forth, the under-established Supreme Court precedent. And this court has actually touched on this issue in a recent decision, Soto v. Gaudet, which hold that the Fourth Amendment does not encompass contact that is accidental if no seizure has yet occurred. And Judge Geary was not required to give an incorrect instruction at the second trial. I think it would really be antithetical to the standards surrounding jury instructions, which is that district courts always have broad discretion to formulate their own instructions. And jury instructions are always based on what the evidence is at trial. And in addition to finding that the intentionality instruction was correct, Judge Geary also found that there was insufficient evidence of recklessness here. The district court could certainly correct that error. And I would at least note that plaintiff, that the city put the plaintiff on notice that it would be seeking an intentionality instruction. Now that the intentions have been drawn to the issue, the parties 10 days before the trial submitted joint jury instructions and the city offered only an intentionality instruction. I'd like to very briefly touch on this lack of notice issue, which is a very big theme for plaintiff that if he wasn't told that he was under arrest before he fled, that's his version. This is really a red herring for multiple reasons. It's a factual red herring, because I don't think there can be any serious deceit that plaintiff thought that he wasn't free to leave. He himself testified that one of the police officers had taken out his handcuffs right before he fled and said, we're going to cuff you. And his testimony before he fled was he knew, quote, that there's no way I'm going to get out of this. And so that he fled. So I think it's incorrect that as a factual matter, the plaintiff thought he was free to leave. But in any event, it really just is irrelevant. This was a lawful pursuit. The officers had probable cause as plaintiff conceded early in trial in the proceedings based on a civilian complaint. And I haven't seen any case that has ever said the police have to stop before pursuing a fleeing suspect and decide not to pursue if they haven't uttered the magic words you're under arrest. And in fact, that would be antithetical to the idea that you could probably pursue someone when you have reasonable suspicion and not only when there is probable cause. I'd like to address the I think plaintiff's focus really is on the first trial and just briefly address Judge Kogan's provident of his exercise of his discretion in setting aside the weight of the evidence. As this court has long recognized, some engagement in credibility determinations by a judge evaluating the weight of the evidence is unavoidable. That's the nature of weight of the evidence review. And that's precisely what the weight of the evidence review allows the court to do. But this is not a case where the court can be substituted. You have one minute left. Thank you. This is not a case where the court simply substituted its credibility determination for the jury. Rather, Judge Kogan looked at the physical realities. He looked at the physical injuries. It was a classic weight of the evidence review considerations. Essential to his reasoning was the lack of any development of the theory of testimony that was offered about the speed was against all common sense. If plaintiff was hit anywhere close to 40, 45 miles per hour, he would have ended up with more than a scrape on the knee and a scrape to the side of his face. If he conceded, he stood up immediately after the contact. And with that, I would like to see if your honors have any questions. Thanks very much. Judge Kears, any questions? No questions here. Thank you. Judge Jacobs. I'm sort of wondering about whether it makes sense to say that if you get hit by a car three miles an hour, you're going to be squashed. If it's a glancing blow, then you could just get a slight injury. And I mean, we have cases of people being hit by trains who have slight injury. I'm not sure I follow that. I have to also say I'm a bit troubled about the imputations of misconduct by the plaintiff's lawyer. I'm afraid I don't quite see that. Could you address that? I'm sorry. On your second question, do you mind if I ask a follow-up question, which is which discussions of misconduct are you referring to? Well, are you referring to the district court comments to plaintiff's counsel? No. Certainly, your honor. They were fairly extensive and there were like four or five of them. Yes, your honor. If I may start there. I mean, although it did not come up on argument today, this allegation of bias became the focus of the plaintiff's reply, but it's an issue with how the trial was being conducted. He could have sought a missed trial or sought recusal, but did neither as well established that you cannot wait until there is an adverse legal ruling to raise the issue. Moreover, in the comments, this sort of laundry list was raised for the first time by plaintiff, of course, in his reply brief and not in the appellant's brief disregard for that reason. But in any event, they're entirely meritless. Plaintiffs, nothing in the decision, the district court's post-trial decision, or in any of these comments indicates bias, which the Supreme Court has defined as deep-seated antagonism that prevents the court from deciding a trial. It's impossible for a court to decide a trial fairly. Almost all of these comments, first of all, were said outside of the hearing of the jury, contrary to plaintiff's statements that they were often. The only statements that were made to the jury were, Mr. Antolino, I'm sure I'm going to have to ask you to go on to something else. We can't take the juror's time, and a corrective instruction that was given following closing statements. All of the rest were outside of the hearing of the jury. And every single one had a very specific factual basis. That is, they were said in response to what the district court viewed as mistakes in the handling of the evidence by plaintiff's counsel. And I'm happy to address any of the specific comments Your Honor would like me to address, but that the district court expressed its disapproval of the handling of exhibits, which was based, in fact, evidence that had been specifically excluded before the jury three different times, and I actually found several more on my review of the record. But as the Supreme Court has emphasized, it's inevitable that over the course of his litigate, over the course of a trial, the court will develop opinions and disagreement with potentially a counsel or a party, but that's no basis to set aside the trial unless it reaches the level of deep-seated antagonism, which none of these comments certainly do. And again, plaintiff has cited them entirely out of context. They are all made in response to what the district court viewed as mistakes that the plaintiff's counsel made with the evidence. Is there any indication that the judge's views as to the conduct of plaintiff's counsel figured into the decision to grant a new trial? The court stated very clearly in its post-trial decision that it would not have granted a new trial based solely on the conduct of counsel alone, but only that it solidified the court's belief. The court was very clear that the center of the decision was the weight of the evidence. And as Judge Deary agreed with Judge Kogan later at the second trial, there was not a scrap of evidence of recklessness in this record, and the whole evidence adduced was implausible. There were two categories of what the court looked at, and I think the court focused, we're talking about the conduct of plaintiff's counsel, and the first one, the one the court really focused on, because it was concerned that it had confused the jury, was the 11th hour change in theory. Counsel, surely that was based on what counsel then knew about the jury charge. Once you know that the charge is going to include recklessness, why wouldn't a lawyer go for it? That a charge is available, Your Honor, and I know that I'm repeating myself a little bit here, but that a charge is available does not mean that, does not give a party free range to switch a theory that is undeveloped at trial and that is unsupported by, as Judge Kogan found, little to no evidence. And to the extent that it was, that evidence was highly implausible, that it's still a decision made by counsel. And the district court was very concerned that absent any exploration by the parties on the issue of recklessness, that that very well could have contributed to the erroneous result. But again, I think Judge Kogan was very clear that that really was something that just bolstered his conclusion. The decision was actually based on the evidence itself. And with respect to the 40 to 45 violent hour speed limit, I think there's absolutely common sense that being hit at anywhere close to that speed would produce more than the effect that is here. Now, the plaintiff, all of the testimony from all of the witnesses, we talked a lot about the word clip, was that there was contact with the front right-hand corner of the vehicle that caused the plaintiff to fall to the ground in front of the vehicle, not that this was just a glancing blow. And plaintiff's version was that he, in fact, was put into the air and he landed on the hood of the car and then slid to the ground. I would note, and I think it's absolutely, of course, it's common sense to say that if that car had been going anywhere close to 40 miles per hour, plaintiff would not have been able to immediately stand up. He would have not just had scrapes. He would have, at the hospital afterward, complained of more than dizziness and some pain in his knee and his hand, and he would have gone to his primary care physician sooner than a month and a half. Yeah. Thank you. Thank you very much. Thank you, Your Honor. All right. All right. I've reserved. Yes, Your Honor. The continued reference to common sense is a fallback position that has no bearing in the record. Afshin Rafiq testified that while they were going down Flatbush Avenue at 40 to 45 miles an hour does not mean that plaintiff was hit dead on at that point. He was brushed by the car. Mr. Rafiq, who had no reason to lie, at least that they didn't point out, that they pointed out, said that it was a pretty good hit. And the injuries showed, whether at a triage visit to the hospital, he said X, Y, and Z rather than A, B, and C, whether he got an appointment with his physician within a day or a month and a half, it was undisputed that he requested one. These were all credibility issues for the jury to resolve that are impossible for a court to cut through and say this is what really happened, which is what the first trial judge did. I didn't want to get into oral argument about the antagonism, and I didn't, but I must say that the antagonism carried through. The statements made in the post-trial decision were unnecessary, harmful to my reputation for no reason, published in the F-subsecond, and all some type of dicta that had nothing to do with this judge's decision as he related. Excuse me. You have one more minute. Okay. Plainest theory at the beginning of the case was that it was an intentional hit. Intentional can mean many things, and it can be intent to do a certain thing not knowing what the harm will be. And when the judge allowed us to argue recklessness, I would be subject to a whether or not we use the words intent or recklessness at trial, there was no doubt that he was chased, and the independent witness said that he was hit and that's how he was stopped. And even if the court had used the objective unreasonability instruction that it should have under Dancy, the result would have been the same, and we would have been happy to argue that. Thank you very much. Thank you. May I ask my colleagues if they have any questions? Judge Kearse? No, thank you. Judge Jacobs? Judge Jacobs? No, thank you. Thank you. All right. Thank you, Judge. We reserve decision.